850 So.2d 751 (2003)
STATE of Louisiana, Appellee,
v.
Rufus Edward WHITE, Jr., Appellant.
No. 36,935-KA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 2003.
Rehearing Denied August 14, 2003.
*756 Peter J. Black, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, J. Thomas Butler, Edward Brossette, Assistant District Attorney, for Appellee.
Before WILLIAMS, CARAWAY and KOSTELKA (Pro Tempore), JJ.
WILLIAMS, Judge.
The defendant, Rufus White, Jr., was charged by bill of information with possession of cocaine, a violation of LSA-R.S. 40:967(C). After a jury trial, the defendant was found guilty as charged. The trial court adjudicated defendant a third felony offender and imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant's motions for new trial and reconsideration of sentence were denied. The defendant appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
Just before midnight on March 6, 2001, Sergeant Rickey Scroggins of the Shreveport Police Department was monitoring traffic at the intersection of Jewella and Greenwood Road. Sergeant Scroggins observed a large brown and white automobile with very darkly tinted front windows that prevented a view into the vehicle, which is a traffic violation. Sergeant Scroggins followed the automobile in his patrol car, turned on his red and blue lights and subsequently stopped the vehicle on Milton Street for the tinted windows violation.
As Sergeant Scroggins exited his vehicle, the brown and white automobile sped off eastbound on Milton Street and pulled into a driveway. The driver, later identified as the defendant, then left his vehicle and ran past a house to a fence leading to a backyard. Sergeant Scroggins got out of his vehicle, secured the passenger, and shouted for the defendant to stop. When the defendant turned around to look at him, Sergeant Scroggins observed the defendant's appearance and clothing. The defendant then ran away. Sergeant Scroggins radioed the defendant's description and location to headquarters and remained at the scene with the passenger, who was questioned and released.
Shreveport Police Officer Brown responded to the report of a traffic stop and as he approached the intersection of Hardy and Grove Streets, he observed the defendant, whose appearance and clothing matched the description of the fleeing suspect broadcast on the radio. When the defendant saw the patrol car, he began to run. Officer Brown stopped and exited the patrol car and tackled defendant to the ground after a short chase. Following a brief struggle, Officer Brown handcuffed the defendant and searched his person.
When Officer Scroggins arrived at the location of defendant's apprehension, he observed fire department personnel administering first aid to the defendant and Officer Brown, whose right knee was cut and swollen. The defendant had scratches on his cheek and hand. Officer Brown recovered a .40 caliber handgun which he had seen the defendant drop during the chase. Afterwards, Officer Brown placed the defendant in the backseat of his patrol car and drove to the city jail at the police station.
Sergeant Scroggins went separately to the station to complete the paperwork.
*757 Because Officer Brown was injured, police procedure required that Scroggins accompany Brown to the hospital for treatment and a drug test. Sergeant Scroggins met Officer Brown at his patrol car in the police parking lot. Before leaving for the hospital, Officer Brown unlocked his patrol vehicle in the presence of Sergeant Scroggins and searched the rear passenger compartment for any contraband or weapons that might have been disposed of by the defendant while in transit to the police station. Officer Brown later stated that he regularly followed this procedure to insure his safety.
Using a flashlight, Officer Brown found a small clear plastic bag on the passenger floorboard. He put on rubber gloves and picked up the bag, which contained a white powder. The bag was not sealed closed and there was a thick clear liquid, which appeared to be saliva, on the outside and inside of the bag. Officer Brown placed the bag inside of a police evidence bag, which he then sealed.
Analysis by forensic chemist Randle Robillard of the North Louisiana Criminalistics Laboratory determined that the white substance in the plastic bag was cocaine. The defendant was charged with possession of a Schedule II controlled dangerous substance, cocaine. The clear fluid inside the bag was tested for the presence of DNA evidence and compared to a buccal swab sample taken from inside the defendant's mouth. The state filed a motion in limine to determine the admissibility of the DNA evidence.
At the original hearing on the motion, the district court heard testimony from the state's expert witness and took the matter under advisement to review the applicable law. Subsequently, the district court denied the motion in limine, but continued the hearing to give the state a chance to produce evidence showing that the DNA analysis satisfied the criteria for admissibility. At the subsequent hearing on the motion in limine, after questioning the state's expert, the court found that the DNA analysis was reliable and could be admitted into evidence.
At trial, Sergeant Scroggins and Officer Brown testified regarding the circumstances surrounding the collection of the plastic bag from the backseat floorboard of Officer Brown's police vehicle. Randle Robillard testified that the white substance contained in the plastic bag was cocaine. Mary Jones, a forensic analyst for the Northwest Louisiana Crime Lab, was accepted as an expert in DNA analysis. Jones testified that she analyzed the DNA profiles for the swab sample taken from the defendant and for the fluid inside the bag containing the cocaine. Jones stated that the test results determined that these DNA profiles were a match.
Jones opined that the likelihood that the DNA inside the bag came from an African American male other than the defendant was one in one-point-two quadrillion and that the probability of finding the same DNA profile in a Caucasian male was one in four-hundred-seventeen trillion. The jury found the defendant guilty as charged. The defendant's motion for new trial was denied.
Subsequently, defendant was adjudicated a third felony offender. The trial court imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence and denied a motion to reconsider the sentence. Defendant appeals his conviction and sentence.

DISCUSSION
Sufficiency of the Evidence
The defendant contends the evidence was insufficient to support the conviction *758 of possession of cocaine. Defendant argues that the evidence presented raised the possibility that his DNA was found on the bag of cocaine because his sweat or spit came in contact with the bag while he was in the backseat of the patrol car.
When issues are raised on appeal both as to the sufficiency of the evidence and other trial error, the reviewing court first determines the sufficiency of the evidence. The reason is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), could not reasonably conclude that all of the elements of the offense were proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347. This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. LSA-Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610.
LSA-R.S. 40:967(C) provides that it is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance as classified in Schedule II. Thus, to convict the defendant for possession of cocaine, the state must prove that defendant knowingly or intentionally possessed the drug. State v. Walker, 32,342 (La.App.2d Cir.9/24/99), 747 So.2d 133.
Possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. State v. Walker, supra; State v. Keys, 29,369 (La.App.2d Cir.5/7/97), 694 So.2d 1107, writ denied, 97-1497 (La.10/31/97), 703 So.2d 21; State v. Lias, 28,091 (La.App.2d Cir.5/8/96), 674 So.2d 1044. "Actual possession" means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. State v. Walker, supra; State v. Keys, supra; State v. Perez, 569 So.2d 609 (La.App. 2d Cir.1990), writ denied, 575 So.2d 365 (La.1991). "Constructive possession" means the object is subject to one's dominion and control and one has knowledge of its existence. State v. Alford, 323 So.2d 788 (La.1975); State v. Lias, supra.
Guilty knowledge is an essential element of the crime of possession of illegal drugs, and such knowledge may be inferred from the circumstances. State v. Walker, supra; State v. Lias, supra; State v. Riley, 587 So.2d 130 (La.App. 2d Cir. 1991). The determination of whether there is possession of cocaine sufficient to convict depends on the facts peculiar to *759 each case. State v. Trahan, 425 So.2d 1222 (La.1983). Although the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
In the present case, the state presented expert scientific evidence that the substance contained in the small plastic bag recovered from the police car was cocaine and that the defendant's DNA was found inside that bag. A reasonable juror could conclude that the presence of the defendant's DNA in the bag of cocaine was sufficient to prove direct physical contact with and control of the drug. This evidence also proved that the cocaine was subject to defendant's dominion and control and that he knew of its existence. Thus, the trier of fact could reasonably conclude that the state established defendant's actual and constructive possession of the cocaine.
In addition, the arresting officer testified that he always searched the passenger compartment of his police vehicle before and after transporting criminals and that he had searched the defendant (but not his mouth) before placing him in the backseat. After the defendant was transported to the police station, a search of the backseat area revealed an unsealed bag of cocaine, which the state proved contained the defendant's DNA. These circumstances support the inference that the defendant held the small, open bag of cocaine in his mouth and spit it out onto the floor of the police vehicle in an effort to avoid detection because of his guilty knowledge that he was in possession of the illegal substance.
Viewed in the light most favorable to the prosecution, the evidence presented was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime of possession of cocaine. The assignment of error lacks merit.
Evidentiary Issues
The defendant contends the district court erred in admitting the DNA evidence. Defendant first argues that his due process rights were violated when the district court continued the hearing on the state's motion in limine for additional evidence and when the court questioned the expert witness after the state had concluded its examination of the witness.
LSA-C.Cr.P. art. 708 defines a recess as "a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced." The decision to grant or deny a recess is within the sound discretion of the trial judge and will not be disturbed absent an abuse of that discretion. State v. Warren, 437 So.2d 836 (La. 1983); State v. Hodges, 98-0513 (La. App. 4th Cir.11/17/99), 749 So.2d 732. Preliminary questions on the admissibility of evidence shall be determined by the court. LSA C.E. art. 104.
While the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses, the court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth, avoid needless consumption of time and to protect witnesses from harassment or undue embarrassment. LSA-C.E. art. 611 A. The court may question witnesses, whether called by itself or by a party. LSA-C.E. art. 614 B.
In the present case, the trial court initially denied the motion in limine, finding that the state had not met its burden for *760 admissibility under the criteria set forth in State v. Charles, 617 So.2d 895 (La.1993). Specifically, the trial court found that the state had failed to produce the information specified as subsections (c) and (d) by the court in State v. Charles, supra.[1]
Here, the trial court determined that its decision on the admissibility of the DNA analysis required a continuance of the hearing for its review of the applicable law and to provide the parties with an opportunity to submit additional evidence on the issue. At a second hearing on the motion in limine, after the state and defense tendered the expert witness, the trial court questioned the state's expert regarding the DNA testing methodology and statistical database used by the crime lab. Defense counsel objected to the trial court's questioning of the expert witness. After overruling the objection, the trial court found that the DNA evidence was reliable and admissible.
We note that the trial court has the authority to grant a recess and to question witnesses called by itself or a party. The trial court's continuance of the pre-trial hearing and the questioning of the state's expert concerning the methodology of the DNA analysis were reasonable means employed by the trial court in its determination of the admissibility of the evidence. Based upon this record, the defendant has not shown that the trial judge abused his sound discretion in presiding over the presentation of evidence and the interrogation of the witness at the motion hearing. Thus, the defendant's argument lacks merit.
The defendant also argues that the DNA evidence should have been excluded because the state failed to establish the foundation for the admissibility of the DNA evidence. Defendant contends the state did not show the basis for the data in the statistical tables used by the crime lab and did not demonstrate that a sufficient number of individuals were considered in the test group used to calculate population frequencies.
With respect to scientific evidence, the trial judge acts as a "gatekeeper," admitting pertinent evidence based on scientifically valid principles. The court's evaluation of the evidence must be flexible, with an eye toward reliability and relevancy. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); State v. Foret, 628 So.2d 1116 (La.1993). Thus, there must be a preliminary assessment by the trial court of whether the reasoning and methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue. State v. Quatrevingt, 93-1644 (La.02/28/96), 670 So.2d 197, cert. denied, 519 U.S. 927, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996); Daubert, supra; State v. Foret, supra.
In considering whether scientific evidence is reliable, the trial court *761 should consider the following factors stated in Daubert: (1) the "testability" of the scientific theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community. Daubert, supra; State v. Quatrevingt, supra. State v. Washington, 36,224 (La.App.2d Cir.9/18/02), 828 So.2d 97. Scientific evidence should be admitted whenever the court's balancing of the probative value and the prejudicial effect results in a determination that the evidence is reliable and helpful to the trier of fact. Admission of the scientific evidence is within the discretion of the trial judge. State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893; Quatrevingt, supra.
In the present case, the state's witness, Mary Deanna Jones, an analyst at the Northwest Louisiana Crime Lab, was accepted as an expert in forensic DNA analysis. During the motion hearings, Jones testified that the crime lab used the Multiplex Polymerase Chain Reaction ("PCR") method of obtaining a DNA sample from specific locations on the chromosomes. The written protocol used by the lab was provided in the Profiler Plus and CO-filer PCR amplification kits.
Jones stated that the PCR methodology is a standard procedure which has been subject to peer review and is used throughout the country. Jones testified that the lab used the Hardy Weinberg Equilibrium Equation with the population frequency database provided by Roche Molecular Systems to calculate the genetic distribution statistics. Jones stated that this procedure is also used nationwide.
The trial court performed its gatekeeping function by carefully scrutinizing the reliability of the scientific evidence offered. The state presented uncontroverted expert testimony that the PCR-derived DNA analysis used by the crime lab has been subjected to peer review and publication, is widely accepted in the scientific community, represents the forensics industry standard and that the probability of error is considered low because the lab used experimental controls to verify the accuracy of the test results. Thus, the record supports a finding that the DNA evidence was reliable and relevant. Consequently, we cannot say the trial court abused its discretion in admitting the results of the DNA analysis in this case. The assignment of error lacks merit.
The defendant contends the trial court erred in admitting his handgun into evidence. Defendant argues that the weapon should have been excluded as impermissible evidence of other crimes and bad acts which was offered to prove he was a person of bad character.
Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person to show that he acted in conformity therewith. Such evidence, however, may be admissible when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. LSA-C.E. art. 404 B(1). For evidence of other crimes to be admissible, the state must prove with clear and convincing evidence (1) that the other acts or crimes occurred and were committed by defendant, (2) demonstrate that the other acts satisfy one of the requirements of Article 404 B(1), and (3) show that the probative value of the evidence outweighs its prejudicial effect. State v. Jackson, 625 So.2d 146 (La.1993).
A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 *762 (La.5/22/95), 655 So.2d 1326; State v. Blackwell, 30,281 (La.App.2d Cir.11/10/97), 701 So.2d 1389, writ denied, 97-3073 (La.2/13/98), 709 So.2d 755. The erroneous introduction of other crimes evidence is a trial error and subject to harmless error review. State v. Salter, 31,633 (La. App.2d Cir.2/24/99), 733 So.2d 58.
During the state's case, Officer Brown testified that he observed the defendant fleeing with a pistol in his hand, and saw him drop the weapon on the ground when he was apprehended. Before the weapon was identified by the witness and introduced into evidence, defense counsel objected to the introduction of "other crimes" evidence. After a bench conference, the witness was allowed to identify a .40 caliber handgun as the weapon which the defendant had dropped.
The defense objected to the introduction of the firearm before it was offered into evidence. Since defendant objected to the alleged irregularity at the time of occurrence, the issue can be considered on appeal. See LSA-C.Cr.P. art. 841; State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347.
Assuming that the firearm constituted evidence of other crimes, wrongs or bad acts, the trial court could have reasonably found that the purpose of admitting such evidence was not to depict defendant as a bad person, but to complete the story of the crime that is the subject of the present proceeding by showing the context of defendant's actions between the traffic stop and his arrest. See State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174. Thus, we cannot say the trial court abused its discretion in admitting the weapon as evidence. Even if we accept for the sake of argument that the trial court erred in admitting the handgun itself into evidence, such an error was harmless since Officer Brown had testified without objection that the defendant had possessed the handgun. This assignment of error is without merit.
Application of Sentencing Statute
The defendant contends the trial court erred in applying the habitual offender sentencing provisions in effect at the time of his offense. The defendant argues that the court should have applied the amended version of LSA-R.S. 15:529.1 that was in effect at the time of his conviction and that the failure to give him the benefit of the amendment was a denial of equal protection under the Louisiana and United States Constitutions.
Pursuant to the habitual offender statute in effect at the time this offense was committed, if the third or either of the two prior felonies was defined as a crime of violence, the penalty for a third felony offender was life imprisonment without benefit of parole, probation or suspension of sentence. LSA-R.S. 15:529.1(A)(1)(b)(ii). Two of defendant's prior felonies (attempted manslaughter and attempted armed robbery) are defined as crimes of violence. LSA-R.S. 14:2(13)(d) and (w).
Under the sentencing provision as amended effective June 15, 2001, the defendant's term of imprisonment as a third felony offender would have been not less than two-thirds the longest sentence for the conviction, but not more than twice the longest possible sentence for a first conviction. LSA-R.S. 15:529.1(A)(1)(b)(i). The sentence for a conviction of possession of cocaine is imprisonment with or without hard labor for not more than five years and a possible fine. Section 6 of Act 403 provides: "The provisions of this Act shall only have prospective effect."
In State v. Wade, 36,295 (La. App.2d Cir.10/23/02), 832 So.2d 977, this *763 court noted that Louisiana applies the penalty set forth in the statute at the time of the offense, and that courts have repeatedly followed this rule. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518; State v. Clark, 391 So.2d 1174 (La.1980); State v. Paciera, 290 So.2d 681 (La.1974). The fact that a statute is later amended to lessen the possible penalty does not extinguish liability for the offense committed under the former statute. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Wade, supra. As this court pointed out in Wade, supra, two other appellate courts have explicitly held that the 2001 amendment to R.S. 15:529.1 is prospective only. State v. Houston, 02-0255 (La.App. 4th Cir.4/24/02), 818 So.2d 253; State v. Flagg, 01-965 (La.App. 5th Cir.3/26/02), 815 So.2d 208.
To prove a violation of the equal protection clause, one must show that the responsible person (here, the judge) acted with discriminatory intent or purpose. State v. Roberts, 36,271 (La.App.2d Cir.8/14/02), 823 So.2d 1100; State v. Edwards, 35,744 (La.App.2d Cir.2/27/02), 811 So.2d 233. Here, the defendant merely alleges that he might be treated differently than others who commit their crimes after the effective date of the amendment. Defendant has failed to show that the trial judge acted with a discriminatory intent or purpose in violation of his equal protection rights. The defendant's contention lacks merit.
The statutory and case law demonstrate that the 2001 amendment of the sentencing scheme of LSA-R.S. 15:529.1 has prospective effect only. This court has not found a need to deviate from the uniform jurisprudence of Louisiana. Consequently, the trial court correctly applied the penalty enhancement provision in effect at the time of the offense in sentencing this defendant. The assignment of error lacks merit.
Challenge for Cause
The defendant contends the trial court erred in denying his challenge for cause of a prospective juror. Defendant argues that the cause challenge should have been granted with respect to prospective juror Christman, who indicated that he would have difficulty giving the accused a presumption of innocence.
In order for a defendant to prove error warranting reversal of both his conviction and sentence, he must show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. State v. Hart, 96-0697 (La.3/07/97), 691 So.2d 651; State v. Divers, 94-0756 (La.9/5/96), 681 So.2d 320, cert. denied, 520 U.S. 1182, 117 S.Ct. 1461, 137 L.Ed.2d 564 (1997); State v. Richardson, 33,272 (La.App.2d Cir.11/1/00), 779 So.2d 771, writ denied, 00-3295 (La.10/26/01), 799 So.2d 1151.
LSA-C.Cr.P. art. 797 provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
* * *
(4) The juror will not accept the law as given to him by the court.
This court has held that a trial court is vested with broad discretion in ruling on *764 challenges for cause, and its ruling will be reversed only when a review of the entire voir dire reveals that the court abused its discretion. State v. Richardson, supra; State v. Ellis, 28,282 (La.App.2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521; State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683.
A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Cross, supra; State v. Richardson, supra; State v. Ellis, supra.
The trial judge must grant a cause challenge "even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986); State v. Richardson, supra.
During voir dire in the present case, when the prosecutor asked prospective juror Christman if he had any personal convictions "whether religious or whatever the case," he responded:
Mr. Christman: Not necessarily convictions, I have an opinion. Except to the extent it would [a]ffect my reasoning. I guess something seems like if the defendant has gotten this far you must have (sic) case against him, or you wouldn't be standing here doing what you (sic).
Question: I can't get some (sic) those details. All we're asking is whether or not you'll hold the State to it's (sic) burden, that is whether you make the state prove its case to you, make myself as an assistant district attorney put testimony on that stand, put physical evidence before you that will tend to prove or disprove someone's guilt. If you don't find the State is doing that what will you do?
Mr. Christman: I guess I would have to make a decision.
Question: If I didn't meet my burden on behalf of the state what verdict would you have to give?
Mr. Christman: Not guilty.
Question: Do you feel you can sit in judgment in a situation such as this?
Mr. Christman: I hope I could.
Question: That's what you have to do. But after you listened would you vote not guilty if the State had not met its burden?
Mr. Christman: Right.
When questioned by defense counsel, Christman was presented with a hypothetical scenario wherein he was charged with being a terrorist because someone had said that there was evidence against him and was willing to testify. When defense counsel asked Christman what he would want potential jurors to believe about him, he responded:
Mr. Christman: I want them to believe I'm not a terrorist. But there must have been some evidence that I was a terrorist, therefore I've been charged. That's what I'm saying. It may be sorted out later.
Question: You believe who come (sic) to trial get to the point where at trial they must be guilty?
Mr. Christman: There's a good chance.
*765 Question: There is something in the legal system called presumption of innocence. It says when a citizen is accused the other citizens should give them (sic) the presumption of innocence. Are you telling me that perhaps you can't do that?
Mr. Christman: It colors my thinking.
Defense counsel then explained that in the Scottish legal system the possible verdicts are guilty, not guilty and not proven. When asked what not proven means, Christman replied that "he probably did it but there is no proof."
Defense counsel challenged Christman for cause because of a concern about whether he would be able to give defendant the presumption of innocence. Defendant's attorney asserted that Christman's responses strongly indicated his belief that because the defendant was on trial he must have done something wrong. The trial court stated its impression that Christman gave some of those responses in an attempt to avoid jury duty. The trial court found that Christman appeared to have begun with some preconceived notions which were subsequently dispelled and denied the challenge for cause over the defendant's objection.
The record reflects that the defendant used a peremptory challenge to excuse prospective juror Christman after his challenge for cause was denied, and that he used all six of his peremptory challenges prior to completion of the jury panel. However, in order to obtain a reversal of his conviction, the defendant must also show erroneous denial of the challenge for cause.
Although at one point Christman expressed a belief that if a person is on trial there is a "good chance" that he is guilty, Christman did not say that he would be unable to give the accused the presumption of innocence. In addition, Christman affirmatively stated that he would vote not guilty if the state failed to satisfy its burden of proof.
A review of the voir dire in its entirety supports the trial court's determination that the potential juror demonstrated an ability to decide this case impartially in accordance with the law and evidence. Consequently, we conclude that the trial court did not abuse its broad discretion in denying the defendant's challenge for cause regarding prospective juror Christman. The assignment of error lacks merit.
Peremptory Challenges
In two assignments of error, the defendant contends the trial court erred in denying his Batson challenge of the state's peremptory strikes and in granting the state's "reverse Batson" challenge. Defendant first argues that the state's use of its peremptory challenges demonstrated a prima facie case of discrimination.
This court, in State v. Wade, supra, set forth the applicable law:
The United States constitution prohibits the State from engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It also prohibits the defendant from engaging in the same conduct. Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); State v. Knox, 609 So.2d 803 (La.1992). Louisiana law codifies this concept in La.C.Cr.P. art. 795 C, which provides:
No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie *766 case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
In a McCollum situation, once the State establishes its prima facie case, the burden shifts to the defendant to come forward with a race-neutral explanation. The explanation need not be persuasive or even plausible; it will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. The ultimate burden of persuasion as to racial motivation rests with, and never shifts from, the opponent of the peremptory exception. State v. Tyler, 97-0338 (La.9/9/98), 723 So.2d 939. The trial court's findings with regard to a Batson challenge are entitled to great deference on appeal. Id.; Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
In the present case, four of the eighteen prospective jurors impaneled were African-American, including potential juror Shivers, who was challenged for cause by the state. The trial court granted the state's challenge prior to either side exercising its peremptory challenges. Of the remaining three African-American prospective jurors, Broussard was accepted by both sides. The state exercised peremptory challenges with respect to the remaining two African-American prospective jurors, Holden and Black. Defense counsel then objected to these peremptory challenges as violations under Batson and moved for a mistrial, pointing out that the state had used two of its three peremptory challenges against two of the remaining African-American members of the panel.
The trial court found that the defense had not made a prima facie case of discrimination by the state, but invited the state to give race-neutral reasons for challenging Black and Holden. The state asserted that Black had stated "some incorrect law," had said that she could not sit in judgment of another, and that a family member had been in drug-related difficulty. In addition, the state was "troubled" with Holden as a juror because of her belief that a family member had not been treated fairly by the justice system.
In his brief, defendant contends the state discriminated in using two of its three peremptory challenges, or 66%, against two of the three remaining African-American members of the jury panel. Defendant attempts to establish a prima facie showing of the state's discriminatory intent with a statistical argument. However, in evaluating intent, the court could consider that the state did not use one of its available peremptory challenges to exclude the remaining African-American prospective juror, Broussard. Based upon this record, we cannot say the trial court abused its discretion in finding that defendant failed to demonstrate that the state sought to exclude jurors solely on the basis of race. Thus, the trial court did not err in denying the motion for mistrial based on the state's use of peremptory challenges. The assignment of error lacks merit.
Defendant also argues that the evidence does not show he intended to discriminate, because his use of six peremptory challenges against twelve remaining Caucasian prospective jurors was less statistically significant than the state's use of two peremptory challenges against only three African-Americans. Defendant contends the trial court erred in finding a prima facie showing of discrimination since the defense *767 struck only 50% of the potential white jurors while the state struck 66% of the potential black jurors. The comment that counsel has a "feeling" about a particular juror is not a sufficiently race-neutral explanation. State v. Ford, 26,422 (La. App.2d Cir.9/21/94), 643 So.2d 293.
In the present case, the state made a McCollum (reverse Batson) objection on the grounds that the defendant had used all of his peremptory challenges to exclude Caucasian prospective jurors. The trial court found that the state had established a prima facie case that the defendant's challenges of prospective jurors were based on race.
When asked to give a race neutral reason for striking prospective juror Dalton, the defense counsel responded that he did not like her. The trial court found that this reason was not sufficiently race neutral and reinstated Dalton. Regarding prospective juror Woodell, defense counsel stated that he did not feel comfortable with her because of a "gut feeling" that she would not give the defendant the presumption of innocence. The trial court found that such a reason was not race neutral and reinstated Woodell. The trial court accepted the defendant's race neutral reasons for challenging prospective jurors Shrader and Christman. Regarding potential jurors Canatella and Hurst, the defense attorney expressed a "gut feeling" about them and explained his need to exclude them in his desire to get another African-American on the jury to adequately reflect the racial makeup of the community. The trial court found that this reason was not race neutral and reinstated Canatella and Hurst.
Considering the applicable law, the defendant's explanations that a juror was challenged because counsel did not like the person or because of a gut feeling are not sufficiently race neutral reasons. Additionally, the defense counsel bluntly explained that the peremptory challenges of Canatella and Hurst were in fact influenced by the race of the jurors. Based upon this record, we cannot say the trial court abused its discretion in finding that defendant used his peremptory challenges to exclude jurors solely on the basis of race. Thus, the trial court did not err in granting the state's McCollum objection. The assignment of error lacks merit.
Scope of Voir Dire
The defendant contends the trial court erred in preventing defense counsel from using the phrase "highest burden of proof" to describe proof beyond a reasonable doubt and from comparing "clear and convincing" evidence with the reasonable doubt standard. The defendant argues that his counsel was prevented from conducting a full and complete voir dire examination of prospective jurors in abrogation of his rights as an accused under the Louisiana Constitution.
LSA-C.Cr.P. art. 786, regarding examination of jurors, provides:
The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case.
An accused has a constitutional right to a full and complete voir dire examination. La. Const. art. I, § 17. Nevertheless, the scope of voir dire lies within the sound discretion of the trial court, and its rulings will not be disturbed by the reviewing court absent clear abuse of that discretion. State v. Roy, 95-0638 (La.10/04/96), 681 So.2d 1230, cert. denied, Roy v. Louisiana, 520 U.S. 1188, 117 S.Ct. 1474, 137 L.Ed.2d *768 686 (1997). While limitations of voir dire may not be so restrictive as to deprive counsel of a reasonable opportunity to determine grounds for challenges for cause and for the intelligent exercise of peremptory challenges, an appellate court should undertake a review of voir dire as a whole in deciding whether the defendant has been afforded sufficient latitude in examining potential jurors. State v. Hamilton, 92-1919 (La.09/05/96), 681 So.2d 1217; State v. Jackson, 29,470 (La.App.2d Cir.8/20/97), 707 So.2d 990.
During voir dire in the present case, defense counsel made the following statement while examining a prospective juror about the burden of proof in criminal cases:
Question: You could correlate that to standards of proof in the legal system, preponderance of the evidence of (sic) where scales are tilted slightly. Then you have clear and convincing evidence, and then the highest which is proof beyond a reasonable doubt.
The state objected to defense counsel's use of the term clear and convincing evidence, and to his use of the adjective "highest" regarding the burden of proof. After the prospective jurors were removed, the trial court sustained the state's objection, instructing defense counsel not to use the terms "clear and convincing" or "highest" when referring to proof beyond a reasonable doubt. When the prospective jurors returned to the courtroom, the trial court again read to them the preliminary instructions regarding proof beyond a reasonable doubt. Defense counsel continued his voir dire examination and elicited responses from prospective jurors regarding their understanding of the burden of proof beyond a reasonable doubt.
We note that during voir dire, the defense was allowed to make distinctions between the civil preponderance of evidence standard and the criminal reasonable doubt standard, and was allowed to refer to the criminal burden as "higher." The defense was only restricted from referring to the reasonable doubt standard as the "highest" burden of proof. The defendant has not shown that the limitations of voir dire were so restrictive as to deprive counsel of a reasonable opportunity to determine grounds for challenges for cause and the intelligent exercise of peremptory challenges. Our review of the voir dire as a whole shows that the defendant was afforded sufficient latitude in examining potential jurors. Consequently, we cannot say the trial court abused its discretion in limiting the scope of the voir dire examination and its ruling will not be disturbed.
Reference to Defendant's Failure to Testify
The defendant contends the trial court erred in denying his motion for mistrial based upon remarks in the state's closing argument. Defendant argues that the prosecutor improperly commented on his decision not to testify in violation of his right against self-incrimination.
In State v. Mitchell, 00-1399 (La.2/21/01), 779 So.2d 698, the supreme court stated the applicable law:
La.C.Cr.P. art. 770(3) provides that the trial court "shall" declare a mistrial when the prosecutor "refers directly or indirectly to ... the failure of the defendant to testify in his own defense...." The purpose behind art. 770(3)'s prohibition against such prosecutorial comment is to protect the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant has not testified on his own behalf. State v. Fullilove, 389 So.2d 1282, 1283 (La.1980); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

*769 "Direct" and "indirect" references to the defendant's failure to take the stand are prohibited by article 770(3). State v. Johnson, 541 So.2d 818, 822 (La.1989). "When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial should be declared, and `it is irrelevant whether the prosecutor intended for the jury to draw unfavorable inferences from defendant's silence.'" Id. (citing Fullilove, 389 So.2d at 1284). When the reference to the defendant's failure to take the stand is not direct, this Court will inquire into the remark's "intended effect on the jury" in order to distinguish indirect references to the defendant's failure to testify (which are impermissible) from statements that are not (which are permissible, though not favored). Johnson, 541 So.2d at 822; Fullilove, 389 So.2d at 1284; State v. Jackson, 454 So.2d 116, 118 (La.1984). In order to support the granting of a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on the defendant's not testifying. State v. Smith, 327 So.2d 355, 362 (La.1975) (on rehearing); State v. Reed, 284 So.2d 574, 576 (La.1973); State v. Howard, 262 La. 270, 263 So.2d 32 (1972).
There are indirect references which focus on, or are intended to focus on a defendant's failure to testify. One such instance is when the defendant is the only witness who can rebut the state's evidence. Such a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify and warrants a mistrial. State v. Perkins, 374 So.2d 1234, 1237 (La.1979); Fullilove, 389 So.2d at 1284; State v. Harvill, 403 So.2d 706, 711 (La. 1981). Then, there are and can be indirect references which are not intended to focus on a defendant's not testifying. One such frequently seen instance is a prosecutor's emphasizing that the State's evidence is unrebutted in a situation where there are witnesses other than the defendant who could testify on behalf of the defense, but have not. See, e.g., State v. Jackson, 454 So.2d 116, 118 (La.1984); State v. Smith, 433 So.2d 688, 697 (La.1983); State v. Latin, 412 So.2d 1357, 1363 (La.1982). Also "[s]tatements in argument to the effect that there is no refuting evidence does (sic) not constitute an impermissible reference to the defendant's failure to testify." State v. Reed, 284 So.2d 574, 576 (La.1973) (citation omitted).
See also State v. Jackson, 31,433 (La. App.2d Cir.1/20/99), 726 So.2d 1061, writ denied, 99-2250 (La.12/17/99), 751 So.2d 876.
In the present case, at the conclusion of the closing argument, the prosecutor made the following statement:
He ran because he had the cocaine on him. He got in the car, didn't want to be caught with the cocaine, discarded it, it was found later on by Officer Brown, it was brought to the Crime Lab for testing. There has been no testimony to the contrary regarding that. These facts are undisputed.
Defense counsel objected and after a bench conference, the state continued its argument. The defendant subsequently moved for a mistrial, which was denied.
The complained of statement made by the prosecutor was not a direct reference to defendant's failure to testify. Thus, inquiry into the remark's intended effect on the jury is necessary. The prosecutor made the statement after referring to evidence that defendant was in possession of cocaine and the apparent intended effect was to emphasize that the state's scientific evidence corroborating the charge had not been disputed by an expert witness called *770 by the defense. Thus, one cannot make a plain inference that the remark was intended to focus the jury's attention on the fact that the defendant did not testify.
Although the prosecutor's comment regarding the lack of contrary testimony is the type of statement not favored by the courts, after reviewing the record we cannot say the trial court erred in concluding that the state's remark did not warrant a mistrial. This assignment of error lacks merit.
Excessive Sentence
Defendant contends the trial court erred in imposing a constitutionally excessive sentence. Defendant argues that the sentence is grossly disproportionate to the seriousness of the offense committed and that the goals of sentencing could have been accomplished with a less severe term of imprisonment.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless infliction of suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
Since the habitual offender statute, LSA-R.S. 15:529.1, in its entirety is constitutional, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Louis, 32,347 (La.App.2d Cir.10/27/99), 744 So.2d 694. The burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so the defendant must:
clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Johnson at 676. Although the Louisiana Supreme Court has stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution, this power should be exercised only in those rare cases where the court is firmly convinced that the minimum sentence is excessive. Johnson, supra; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00); 766 So.2d 678.
As previously noted, the trial court adjudicated defendant a third felony offender and imposed the mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence pursuant to the provisions of the habitual offender statute in effect at the time of the offense. In his brief, defendant contends he is a victim of the legislature's failure to assign sentences tailored to the culpability of the offender and the gravity of the crime, because the offense of conviction involved less than one gram of cocaine.
Despite this contention, the defendant has failed to clearly and convincingly demonstrate any unusual circumstances which make him exceptional, such that imposition of the mandatory minimum sentence would subject this defendant to punishment that is not meaningfully tailored to his culpability or to the gravity of his offense. Although harsh, the sentence imposed is neither grossly disproportionate to the seriousness of the offense nor shocking to the sense of justice. Consequently, we cannot say the mandatory life sentence is constitutionally excessive.
*771 Defendant also argues that the habitual offender law subjects him to double jeopardy. The Louisiana Supreme Court has previously held that the habitual offender statute merely prescribes an enhanced penalty for multiple offenders and does not subject a convicted offender to double jeopardy or impose cruel and unusual punishment. State v. King, 355 So.2d 1305 (La.1978); State v. Linkletter, 345 So.2d 452 (La.1977). Thus, the assignment of error lacks merit.
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PEATROSS, and TRAYLOR, JJ.
Rehearing denied.
NOTES
[1] In Charles, the supreme court ordered the state to designate which of three DNA test reports would be introduced at trial and further stated:

(2) Should the state designate either of the first two DNA test reports and results received by the defense, ... the state is hereby ordered to provide to the defense the following documents and evidence required by the defendant's expert:
* * *
(c) How the tables used by the laboratory were obtained in order to reach its conclusion that the genotypes in each system are in Hardy-Weinberg equilibrium proportions and all four systems are independently distributed in the population;
(d) How many individuals were used to calculate the frequencies in each column of the tables and how those individuals can be characterized demographically;
* * *