948 So.2d 1151 (2007)
STATE of Louisiana, Appellee
v.
Ricky Wayne THOMAS, Appellant.
No. 41,734-KA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 2007.
*1152 Ricky Wayne Thomas, pro se.
*1153 Louisiana Appellate Project by Laura M. Pavy, for Appellant.
Paul J. Carmouche, District Attorney, for Appellee.
Before BROWN, WILLIAMS and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. The defendant, Ricky Wayne Thomas, was convicted of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2. He was sentenced as a fourth felony offender to life imprisonment at hard labor, without the benefit of probation, parole or suspension of sentence. Thomas appeals his conviction and sentence, which we affirm for the following reasons.

FACTS
Thomas was charged by bill of information for simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2. At the trial of the matter, the following facts were adduced.
On the morning of April 15, 2002, Hugo and Angela Bellamy and a friend, Jimmy Moore, returned to the Bellamys' home, and when Hugo entered the house, he noticed a glare coming from a back bedroom. He hollered to his wife, who had remained outside, that someone was in the house. Hugo then encountered an intruder coming out of the back bedroom wearing Hugo's hat on his head. Hugo attempted to grab the intruder; however, he was unable to hold onto him due to an injured left hand. During this time, Angela was standing behind her husband and was able to observe the intruder.
When Hugo and Moore tried to corner the intruder, he claimed to be on drugs and dangerous. Concerned for their safety, the victims decided to let the intruder go. He ran out of and around the house, over a fence and disappeared. Upon searching the house, the Bellamys determined that the intruder had stolen several rings, a necklace, two watches, a gold coin collection and some silver dollars.
The Bellamys made a police report to Officer David Crye of the Vivian Police Department. According to the report, the Bellamys described the perpetrator as a black male of dark complexion, in his early 20's, of stocky build and weighing approximately 200 pounds wearing a red shirt and a ball cap. Officer Crye took the Bellamys' statement and made a list of the items allegedly taken. His investigation did not include dusting for fingerprints.
Approximately one week later, on April 22, 2002, the Bellamys were driving along when Hugo spotted Thomas walking on the street and recognized him as the intruder. He dropped his wife off to keep an eye on Thomas and drove to the police department to report the sighting.
When he returned with Officer Crye, Angela pointed them in the direction which Thomas had walked. Hugo got in Officer Crye's patrol car and they drove around until they spotted Thomas walking down a driveway into a trailer park. Officer Crye stopped Thomas, and while he was doing an initial pat-down of Thomas, Hugo opened the door of the patrol unit and said, "That is him." At this point Thomas struggled free from Officer Crye and ran away. Subsequently, Thomas was arrested by Sergeant Ryan Nelson and K-9 Officer James Rose of the Vivian Police Department.
As stated, Thomas was charged by bill of information with one count of simple burglary of an inhabited dwelling. Following the jury trial, Thomas was found guilty as charged by unanimous verdict. Thereafter, the state filed a bill of information *1154 alleging that this last conviction was Thomas' eighth felony conviction and requested that he be sentenced as a fourth felony habitual offender. The adjudication hearing, adjudication, and sentencing all took place on January 19, 2006. At the beginning of that hearing, the defense filed a motion for post-verdict judgment of acquittal. After brief argument, the motion was denied.
During the habitual offender proceeding, the state presented the following evidence:
 Proof of guilty plea actually taken on February 5, 1992, to an October 16, 1991, simple burglary (Docket # 156,733 of the First JDC), relative to which Exhibit S-2 contains the bill of information with fingerprints of the defendant therein and court minutes;
 Proof of guilty plea taken on September 26, 1994, to an April 16, 1994, simple robbery (Docket # 169,374 of the First JDC), as reflected by Exhibit S-3 containing the bill of information with fingerprints of the defendant therein, court minutes and transcript;
 Proof of guilty plea taken on February 9, 1996, to simple robbery committed on August 17, 1995 (Docket # 176,637 of the First JDC), as reflected by Exhibit S-4 containing the bill of information with fingerprints of the defendant therein, court minutes and transcript;
 Proof of guilty plea taken on August 10, 1999, to simple burglary of an inhabited dwelling committed on July 9, 1999 (Docket # 203,124 of the First JDC), as reflected by Exhibit S-5 containing the bill of information with fingerprints of the defendant therein and court minutes; and
 Fingerprints of Thomas taken in court in the instant matter.
The state presented the testimony of an expert in fingerprint analysis who after comparing the prints on the bills of information from the predicate offenses and comparing them to those of Thomas given in court in this matter concluded that all fingerprints were taken from the same person, i.e., Thomas. The state then requested that the trial court take judicial notice of the conviction of the instant offense of simple burglary of an inhabited dwelling.
The trial court subsequently found Thomas to be a fourth felony habitual offender, sentencing him to serve the mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. Thomas' timely-filed motion to reconsider sentence was denied, and this appeal ensued.

DISCUSSION
In his first assignment of error, Thomas argues that the evidence of his identification as the perpetrator of the burglary was insufficient to support a conviction for two reasons: (1) the Bellamys' description of the intruder given to the police in the immediate aftermath of the crime lacked particularity; and, (2) the police failed to dust for fingerprints to which Thomas' prints could have been compared. We disagree.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, XXXX-XXXX (La.02/28/96), 668 So.2d 1132. It is the role of the fact finder to weigh the respective credibility of the witnesses and, therefore, an appellate court accords great deference to a jury's decision to accept or *1155 reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422. In the absence of internal contradiction or irreconcilable conflict with other evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writ denied, XXXX-XXXX (La.11/15/96), 682 So.2d 760, writ denied, XXXX-XXXX (La.06/26/98), 719 So.2d 1048.
To the extent the identification of the defendant as the perpetrator of the crime is an issue, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof beyond a reasonable doubt. State v. Bright, XXXX-XXXX (La.04/11/00), 776 So.2d 1134. The factfinder weighs the respective credibility of the witnesses, and this court will generally not second-guess those determinations. Id. Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.04/08/96), 672 So.2d 428, writ denied, XXXX-XXXX (La.10/31/97), 703 So.2d 12.
Here, both victims identified Thomas at trial as the intruder they saw in their home on April 15, 2002. The Bellamys' testimony indicated that they had ample time to observe the intruder during the burglary, and their testimony as to his identity was neither conflicting nor internally inconsistent. Hugo testified that he had come face-to-face with the intruder. When Hugo was asked about the degree of certainty in his identification, he stated that he was "positive," "100 percent positive," and that he "would know him anywhere." There is no evidence in the record that either of the witnesses' visibility was impaired by poor lighting or other conditions which might call the identification into question. Furthermore, the evidence showed that Hugo independently identified Thomas just one week later while Thomas was walking down the street. That identification was entirely random and not solicited by law enforcement; thus there is no evidence that it was the result of any suggestive procedure. The jury was called upon to evaluate the credibility of the victims and decided to accept their identification as accurate. Nothing in their testimony presented an internal inconsistency or an irreconcilable conflict with physical evidence. Therefore, the jury's decision to credit this testimony was not manifestly erroneous or clearly wrong. Furthermore, there is no requirement that the police dust the crime scene for fingerprints. The fact that the Bellamys actually saw Thomas committing the crime does not make it unreasonable that the jury would have convicted him solely on this evidence and without fingerprint evidence. Accordingly, this assignment of error is without merit.
In his second assignment of error, Thomas argues that the trial court imposed an excessive sentence. Specifically, he argues that the trial court erred by not complying with La. C. Cr. P. art. 894.1, and in giving him the maximum sentence of life imprisonment at hard labor, because such sentences should be reserved for the most serious violations of the subject offense.
In this case, La. R.S. 15:529.1(A)(1)(c)(ii) mandated a life sentence without benefits for Thomas, because he is a fourth felony offender whose current offense is punishable by 12 years at hard labor and two of his predicate offenses (simple robberies) are defined as crimes of violence. La. R.S. 14:2(13)(y).
*1156 Where there is a mandatory sentence, there is no need for the trial court to justify, under article 894.1, a sentence it is legally required to impose. State v. Burd, 40,480 (La.App.2d Cir.01/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/09/06), 941 So.2d 35. Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C. Cr. P. art. 894.1 is not required. State v. Gay, 34,371 (La.App.2d Cir.04/04/01), 784 So.2d 714. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. State v. Johnson, 31,448 (La.App.2d Cir.03/31/99), 747 So.2d 61, writ denied, XXXX-XXXX (La.11/12/99), 749 So.2d 653, cert. denied, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
The mandatory life sentences the habitual offender law requires are presumptively constitutional and should be accorded great deference by the judiciary. State v. Johnson, XXXX-XXXX (La.03/04/98), 709 So.2d 672, 675; State v. Wade, 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.04/04/03), 840 So.2d 1213. Nevertheless, the Louisiana Supreme Court has stated that courts have the power to declare a mandatory minimum sentence excessive under Article I, Section 20 of the Louisiana Constitution. That power, however, should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive. State v. Ponsell, 33,543 (La.App. 2d Cir.08/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.
Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Gay, supra; State v. Johnson, supra. The courts have held that the burden is on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so the defendant must "clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Johnson, supra; State v. Wade, supra.
Furthermore, a trial judge may not rely solely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the only reason, or even the main reason for declaring such a sentence excessive. State v. Lindsey, XXXX-XXXX (La.10/17/00), 770 So.2d 339; Wade, supra.
Here, Thomas fails to articulate any reason why his circumstances justify an exception to the imposition of the mandatory sentence. As noted above, in order to overcome the legislative mandate, there must be clear and convincing evidence that the defendant is exceptional or that, because of unusual circumstances, he is the victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. No such unusual circumstances are argued nor do they appear to be present in this case. Furthermore, the record indicates that Thomas is in fact a five-time felony offender (and potentially an eight-time felony offender). Therefore, his mandatory life sentence does not shock the sense of justice. See State v. Dorthey, 623 So.2d 1276 (La.1993).
*1157 Finally, a review of this record reflects that at sentencing, the trial court did not advise Thomas of the time period within which to apply for post-conviction relief. The Louisiana Supreme Court has held that La. C. Cr. P. art. 930.8(C), which requires the trial court to inform the defendant of the limitations period for filing an application for post-conviction relief, is supplicatory language which does not bestow an enforceable right on an individual defendant. State ex rel. Glover v. State, 1993-2330 (La.09/05/95), 660 So.2d 1189. The trial court should have advised Thomas, and we now advise him by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. arts. 914 or 922.

CONCLUSION
For the foregoing reasons, Ricky Wayne Thomas' conviction and sentence are affirmed.
AFFIRMED.