CARAWAY, J.
 

 |! John Edward Marshall was convicted of distribution of cocaine and was subsequently adjudicated a fourth felony offender and sentenced to life imprisonment at
 
 *1086
 
 hard labor without the benefit of parole, probation, or suspension of sentence and a $50,000 fine. Marshall appeals his conviction and sentence. We affirm his conviction and adjudication as a fourth felony-offender but amend the imposed sentence to delete the $50,000 fine.
 

 Facts
 

 On April 10, 2009, the state filed a bill of information charging John Edward Marshall and Katherine Ann Williams (“Williams”) with one count of distribution of crack cocaine, a Schedule II controlled dangerous substance in violation of La. R.S. 40:967(A)(1), arising from both defendants’ participation in a buy/bust operation with undercover Shreveport police. The trial of both defendants before a jury commenced on July 21, 2009. Nevertheless, on the second day of the trial, the court allowed Williams to enter a guilty plea to one count of distribution of crack cocaine in exchange for the State’s dismissal of a second charge for possession of crack cocaine.
 

 After hearing testimony from the participating officers and Williams, the jury returned a unanimous verdict of guilty as charged. Motions for new trial and for post-verdict judgment of acquittal were denied. Marshall was subsequently sentenced to 30 years’ imprisonment at hard labor without the benefit of probation, parole or suspension of sentence, and a $50,000 fine.
 

 |2The State filed a habitual offender bill, charging Marshall as a fourth felony offender on the basis of his current conviction and nine previous felony convictions dating back to 1972. The nine felony convictions were for the following crimes: (1) receiving stolen goods over $100; (2) simple escape; (3) crime against nature; (4) attempted felony theft; (5) illegal discharge of a weapon; (6) simple robbery; (7) illegal possession of stolen things; (8) possession of a controlled dangerous substance, Schedule II; and, (9) middle grade theft-second felony offender. Marshall was adjudicated a fourth felony offender on October 1, 2009. That same day, his previous sentence was vacated and, because he waived any sentencing delays, he was resentenced to a term of life imprisonment at hard labor and a $50,000 fine. A motion to reconsider sentence was filed on October 20, 2009, and denied the same day. The instant appeal followed.
 

 Discussion
 

 In the drug transaction in question, Williams approached Marshall to purchase cocaine for undercover agents. Marshall argues that the evidence was insufficient to convict him on a charge of distribution of 2 grams of crack cocaine where Williams (the buyer) was not searched by the agents prior to her contact with Marshall, raising the possibility that she had possessed the crack cocaine at all times before the transaction. Marshall also contends that Williams’s testimony after her guilty plea was contaminated by self-interest to the extent that it alone was legally infirm and could not fairly demonstrate Marshall’s guilt.
 

 laWhen issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt.
 
 *1087
 

 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347,
 
 writ denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. at 319, 99 S.Ct. at 2789;
 
 State v. Tate,
 
 01-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181,
 
 writ denied,
 
 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833,
 
 writ denied,
 
 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685,
 
 writ denied,
 
 09-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582,
 
 writ denied,
 
 09-0372 (La.11/6/09), 21 So.3d 299;
 
 State v. Parker,
 
 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497,
 
 writ denied,
 
 07-2053 (La.3/7/08), 977 So.2d 896.
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 06-1083 (La.11/9/06), 941 So.2d 35.
 

 This includes the testimony of accomplices. An accomplice is a competent witness to testify against her co-perpetrator even if the prosecution offers her inducements to testify; these inducements weigh on the witness’s credibility.
 
 State v. Jetton,
 
 32,893 (La.App.2d Cir.04/05/00), 756 So.2d 1206,
 
 writ denied,
 
 00-1568 (La.03/16/01), 787 So.2d 299. The credibility of an accomplice’s testimony is not within the province of the court of appeal to decide.
 
 Id.
 
 Rather, credibility evaluations are within the province of the trier of fact.
 
 Id.
 
 The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023
 
 *1088
 
 (La.01/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
 

 An individual is guilty of distribution of cocaine when he transfers possession or control of the cocaine to his intended recipient. The State must show: (1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance.
 
 State v. Kelley,
 
 36,602 (La.App.2d Cir.01/29/03), 836 So.2d 1243;
 
 State v. Manning,
 
 30,809 (La.App.2d Cir.06/24/98), 715 So.2d 668.
 

 Un proof of its case, the state presented the testimony of Corporal Steve McKemma, a member of the Shreveport Police Department. Corporal McKemma testified that on January 23, 2009, he was in an unmarked vehicle with two other agents working undercover in a buy/bust operation. As the agents stopped in the 2500 block of Sassafras in the Hollywood area of Shreveport, Williams approached the vehicle and asked what the occupants needed. McKemma told her they were looking for some “hard,” a street term for crack cocaine. Williams indicated that she could get them some and got in the vehicle with the undercover agents. Williams directed McKemma to the 6700 block of Clift Avenue in Shreveport.
 

 Once there, McKemma pulled the vehicle over to the side of the road and gave Williams $20 in buy funds.
 
 [1]
 
 McKemma testified that Williams exited the vehicle and approached a group of four or five individuals in the parking lot of an apartment complex. After a couple of minutes, Williams returned to the vehicle, got in and told McKemma to drive away. As he did, Williams handed Agent Ferguson a yellow Baggie of crack' cocaine.
 
 [2]
 
 McKem-ma then gave a verbal signal to the surveillance arrest team that the transaction had been made and the arrest team initiated an investigatory stop resulting in Williams’s arrest. On cross-examination, McKemma admitted [ 7that Williams had not been frisked at any time before she approached the group of individuals.
 

 Officer Adrian Ferguson next testified that she was working undercover on the date in question and was riding in the front seat of the vehicle driven by Corporal McKemma. Her testimony identified the Clift Street Apartments as the location to which Williams took them and placed the number of individuals in the group outside at seven to eight. Like Corporal McKemma, Ferguson did not see the individual from whom Williams allegedly obtained the cocaine.
 

 Chris Embry, a member of the Shreveport Police Department, was part of the surveillance arrest team working with the undercover unit conducting the buy/bust operation in question. Embry testified that after Williams entered the undercover unit, he followed the unit to the apartments on Clift Street and parked approximately one block south of where the undercover unit pulled over. He witnessed Williams exit the vehicle and approach Marshall who was standing in a group of approximately five to seven individuals. According to Agent Embry, once Williams
 
 *1089
 
 made contact with a man in a shirt with a blue collar, later identified as Marshall, the two walked away from the group, toward the apartments and through a door into a hallway. While in the building, Agent Embry lost sight of Marshall and Williams for three to four minutes until they exited the building. When they reemerged, Williams walked back to the undercover unit and Marshall rejoined the group of individuals in the parking lot.
 

 IsWhen the arrest team received the arrest signal from Corporal McKemma, Agent Embry testified that they pulled their surveillance vehicle into the apartment parking lot and arrested Marshall. The search of Marshall incident to the arrest yielded the “buy funds” which Corporal McKemma had provided to Williams just before she made contact with Marshall. The defendant did not have any drugs on his person at the time of the arrest.
 

 Agent Sean Parker was in a second surveillance vehicle which also followed Corporal McKemma to the Clift Street Apartments. After they arrived, he observed Williams exit the vehicle, approach a group of individuals hanging out in the parking lot and make contact with a black male wearing a blue shirt. Williams and the individual walked into a foyer-like area of the apartments. After they reemerged, Parker witnessed the black male hand Williams something, but he could not identify the item being exchanged. Williams then proceeded to Corporal McKemma’s undercover vehicle and Marshall rejoined the group in the parking lot. Once the arrest signal was given, his surveillance vehicle followed the undercover unit to arrest Williams. As they did so, he was able to observe the other arrest unit move in and take the black male with whom Williams had made contact into custody.
 

 The State also called Williams as a witness. She confirmed that she had pled guilty as charged to one count of distribution of crack cocaine. In relating the events of the date in question, her testimony substantiated the State’s evidence against Marshall. Williams claimed to have known |9Marshall “for years.” She directed McKemma to Clift Street where she exited the vehicle and approached Marshall to make the buy. They retreated to the hallway of the apartment building which Williams testified belonged to an individual by the name of “Pop.” Once there, Marshall took the buy funds from Williams, retrieved crack from a hole in the wall, and gave it to Williams in a yellow bag. Williams exited the hallway with Marshall five or six feet behind her, and she proceeded to the vehicle in which she had arrived. Williams admitted to a criminal history including numerous convictions.
 

 The defense called one witness, Eddie Gillard. Gillard testified that on January 23, 2009, he was watching a movie in a bedroom in Pop’s apartment and had a good vantage point of the apartment’s hallway. He testified that during the movie he witnessed an exchange take place in the hallway between Marshall and Williams. He testified that all he saw change hands between them was money, but he admitted he was engrossed in the movie he was watching.
 

 This evidence, when viewed in the light most favorable to the state, is sufficient to support Marshall’s conviction. Aside from Williams’s testimony, the testimony of two of the officers and Gillard identified Marshall as the person involved in the transaction with Williams. Marshall’s possession of the buy funds is direct evidence of the sale of cocaine which is also circumstantially indicated by Williams’s actions with the officers in arranging for the transaction
 
 *1090
 
 and her delivery of the cocaine to them immediately after encountering Marshall. Her testimony identifying |inMarshaIl as the seller is therefore well corroborated by this overall body of evidence against him, and the jury, which was aware of her plea agreement with the State, could accept the credibility of her testimony despite her role as an accomplice in the crime.
 

 Thus, contrary to Marshall’s assertions, the State’s evidence is sufficient to establish delivery, guilty knowledge and the identity of the controlled dangerous substance beyond a reasonable doubt. This assignment of error has no merit.
 

 Marshall also argues that the imposition of the mandatory life sentence was constitutionally excessive because all of his prior offenses were either nonviolent or minimally violent.
 

 Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court’s compliance with La. C. Cr. P. art. 894.1 is not required.
 
 State v. Thomas,
 
 41,734 (La.App.2d Cir.1/24/07), 948 So.2d 1151,
 
 writ denied,
 
 07-0401 (La.10/12/07), 965 So.2d 396;
 
 State v. Gay,
 
 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant.
 
 State v. Johnson,
 
 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61,
 
 writ denied,
 
 99-1689 (La.11/12/99), 749 So.2d 653,
 
 cert. denied,
 
 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
 

 In this case, La. R.S. 15:529.1(A)(l)(c)(ii) mandated a life sentence without benefits for Marshall who is a fourth felony offender with two prior felonies, simple robbery and illegal discharge of a weapon, that are defined |nas crimes of violence. La. R.S. 14:2(B)(23) & (29). The mandatory life sentence the habitual offender law requires is presumptively constitutional and should be accorded great deference by the judiciary.
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672, 675;
 
 State v. Wade,
 
 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977,
 
 writ denied,
 
 02-2875 (La.4/4/03), 840 So.2d 1213.
 

 In
 
 State v. Dorthey,
 
 623 So.2d 1276, 1280-81 (La.1993), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment, or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive.
 

 In
 
 State v. Johnson, supra,
 
 the Louisiana Supreme Court further qualified the
 
 Dorthey
 
 holding permitting a downward departure from a mandatory minimum sentence in the context of the Habitual Offender Law. Specifically, the court held that to rebut the presumption that the mandatory minimum sentence was constitutional, the defendant had to “clearly and convincingly” show that:
 

 [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
 

 Johnson,
 
 at 676.
 

 |12A trial judge may not rely solely upon the nonviolent nature of a crime before the court or of past crimes as evidence that justifies rebutting the presumption of constitutionality.
 
 Johnson,
 
 at 676.
 

 
 *1091
 
 The present case clearly falls within the circumstances enumerated in La. R.S. 15:529.1(A)(l)(c)(ii) which mandate a sentence of life imprisonment for a fourth felony offender. Marshall’s current offense for distribution of cocaine is a violation of the Uniform Controlled Dangerous Substance Law punishable by imprisonment for ten years or more, and two of his prior felonies are enumerated as crimes of violence in La. R.S. 14:2. Because the mandatory life sentence is presumptively constitutional, and therefore not excessive, Marshall was obligated to “clearly and convincingly” show that because of unusual circumstances he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. The jurisprudence holds that he cannot do so by solely relying “upon the nonviolent nature of a crime before the court or of past crimes.” Because Marshall makes no argument beyond the alleged nonviolent nature of his offenses to justify a downward departure from the mandatory sentence, he has failed to satisfy this heavy burden. Thus, the assignment is without merit.
 

 In a related argument, Marshall asserts that he could not be sentenced to a fine of $50,000 because of jurisprudence which holds that a defendant cannot be sentenced to jail time in default of a fine when it will cause him to be imprisoned beyond the maximum duration fixed by statute.
 

 k,La. R.S. 40:967(B)(4)(b) provides, for imposition of a fine of not more than $50,000. With respect to the fine, however, the Louisiana Supreme Court has held that because La. R.S. 15:529.1 does not authorize imposition of a fine, but only provides for enhanced sentences relating to the term of imprisonment, a trial judge is without authority to impose a fine on resentencing under La. R.S. 15:529.1.
 
 State v. Dickerson,
 
 584 So.2d 1140 (La.1991). When such an illegal fine has been imposed, this Court’s remedy has been to amend the sentence to delete the fine. See State
 
 v. Ealy,
 
 44,252 (La.App.2d Cir.5/13/09), 12 So.3d 1052,
 
 writ denied,
 
 09-1393 (La.2/5/10), 27 So.3d 298;
 
 State v. Davidson,
 
 44,916 (La.App.2d Cir.2/10/10), 32 So.3d 290. Thus, on different grounds, Marshall’s argument has merit.
 

 Because the trial court was without authority to impose a fine under the habitual offender statute, Marshall’s sentence is amended to delete the $50,000 fine.
 

 Conclusion
 

 For the foregoing reasons, Marshall’s conviction and adjudication as a fourth felony offender are affirmed. His sentence is amended to delete the imposed fine and, as amended, is affirmed.
 

 CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED IS AFFIRMED.
 

 [1]
 

 . McKemma testified that “buy funds” are monies which are used by undercover agents to conduct controlled purchases of narcotics and which have had their serial numbers documented for comparison with money in the possession of a suspect when arrests are made.
 

 [2]
 

 . Bruce Stinson, a chemist with the North Louisiana Crime Lab, testified that the substance delivered by Williams to Officer Ferguson when she returned to the car tested positive for cocaine.