79 So.3d 1270 (2011)
STATE of Louisiana, Appellee
v.
Bruce Edward ROBINSON, Appellant.
No. 46,737-KA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2011.
Rehearing Denied January 19, 2012.
*1271 Louisiana Appellate Project, by Carey J. Ellis, III, Bruce Edward Robinson, for Appellant.
Charles Rex Scott, II, District Attorney, Jason Trevor Brown, Tommy Jan Johnson, Assistant District Attorneys, for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
DREW, J.
Bruce Edward Robinson was convicted of two counts of distribution of cocaine and one count of felony theft. After being adjudicated a fourth felony offender, he was sentenced:
 to life without all benefits for one of the distribution crimes; and
 to a concurrent 20-year sentence, on the theft conviction, without benefit of probation or suspension of sentence.
We cannot find that he was sentenced on the second distribution offense.
We affirm all three convictions. We affirm the two sentences, and remand for sentencing on the second count of distribution.

FACTS
Evidence at trial revealed that on November 7, 2007, the defendant sold two grams of cocaine for $160 to undercover officer Sean McCullough, an employee of the Caddo Parish Sheriff's Office. The defendant was not arrested on that date. Agent McCullough arranged a larger buy on November 13, 2007. The sale on that day was 21 grams of cocaine[1] for $1,000. Once the transaction was complete, Agent McCullough signaled the surveillance team to move in and arrest the defendant. After a short foot pursuit, the defendant was captured and read his Miranda[2] rights.
At the police station, the defendant informed Agent McCullough that he did not want to go to jail and wanted to help himself. He agreed to arrange a buy from his supplier, Justin Thomas. The defendant was fingerprinted and given $700 in buy funds and a digital recorder.
On that same evening, the defendant contacted Thomas to arrange a buy. An officer drove the defendant to the prearranged location. Instead of completing *1272 the transaction, the defendant and Thomas drove off. It took a year for the defendant to be apprehended. The digital recorder and buy funds were never recovered from the defendant.[3]
Following closing arguments, defense counsel moved for a mistrial on the basis that the state indirectly referred to the defendant's failure to testify. Specifically, defense counsel argued that the state's reference during closingthat the evidence was "uncontroverted" and that there was no evidence to "refute" what was presentedwas an indirect reference to defendant's Fifth Amendment right not to testify. The trial court denied the motion, ruling that the state's use of the contested words neither directly nor indirectly referred to the defendant's failure to testify in his own defense.
After the jury convicted defendant on all counts, the state filed a fourth-felony habitual offender bill of information asserting these previous crimes:
 illegal possession of stolen things (1997);
 felony theft (2001);
 possession with intent to distribute Schedule II, CDS (2005);
 battery of a police officer (2005); and
 possession of Schedule II, CDS (2008).
On April 20, 2010, the defendant pled guilty to being a fourth-felony offender. He was subsequently sentenced as outlined before.

DISCUSSION

I. MISTRIAL
Defendant argues that he was entitled to a mistrial on account of the state's remarks during closing arguments. The state argues that the comments made were not directed at the defendant's failure to testify. The state insists that the comments were directed at defendant's failure to present contrary evidence to the state's fingerprint expert.
Our law on the review of denial of mistrials is well settled.[4]
This is the contested portion of the prosecutor's closing argument:

*1273 MR. BROWN: Owen McDonnell who has a great many qualifications testified as an expert in this jurisdiction, many other parishes, federal court, he did a fingerprint comparison of this print, that's the original that was taken on November 13, 2007, to the inked impressions, State Exhibit No. 5, from the defendant here today. This man. (Indicating.) Not anybody else but him. And in his expert opinion, it's the same person. Well, we know that. It [sic] uncontroverted. That's the same person. All the evidence points to him.
Common sense reading of these words compels our agreement with the state on this matter. The defendant, presumably not an expert in fingerprint comparison and analysis, could not have controverted the expert's testimony.
Defendant also complains about the state's comment during its rebuttal.
The state concluded its rebuttal by stating that "there has been no evidence other than the argument to refute any of this, just argument, that's not evidence, ladies and gentlemen." We also find that these comments cannot be reasonably construed to reference defendant's decision not to testify.

II. EXCESSIVE SENTENCE
Our law on the review of allegedly excessive sentences is well settled.[5]
*1274 La. R.S. 15:529.1(A)(4)(b) mandates a life sentence without benefits for the two distribution convictions. The defendant pled guilty to being a fourth-felony offender, the instant offense was a violation of the Uniform Controlled Dangerous Substances Law ("UCDSL"), and he had a prior conviction of a violation of UCDSL and a crime of violence, battery of a police officer, La. R.S. 14:2(B)(41). Since the statute requires a mandatory life sentence, there was no need for the trial court to review and consider the factors set forth in La. C. Cr. P. art. 894.1. State v. Thomas, 41,734 (La.App.2d Cir.1/24/07), 948 So.2d 1151, writ denied, 2007-0401 (La.10/12/07), 965 So.2d 396.
For the felony theft conviction, as a fourth-felony offender, the defendant's penalty exposure was 20 years to life imprisonment. The trial court imposed the minimum sentence allowed by the statute of 20 years at hard labor without the benefit of probation or suspension of sentence, in compliance with La. R.S. 15:529.1(G).[6] Although mandatory minimum sentences are presumed constitutional, the presumption is rebuttable. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. The defendant, however, failed to rebut the presumption that his sentence was constitutional. He did not offer any evidence that his circumstance was exceptional and thus deserving of a downward departure. State v. Dorthey, 623 So.2d 1276 (La.1993).

III. PRO SE ASSIGNMENT OF BATSON VIOLATIONS
Our law relative to the review of Batson challenges is well settled.[7]
*1275 Defendant argues that African-American jurors were targeted by the state and removed because of their race. He contends that the trial court failed to conduct the proper race-neutral inquiry. Defendant further argues that there has been an "abridgment of his appellate rights" because the appellate record does not contain the transcripts of the jury voir dire.
Defendant is correct in that this appellate record does not contain the transcript of the jury voir dire. At the time of the jurisdiction check on July 19, 2011, the record was sufficient to address the assignments of error filed by appellate counsel, despite defense counsel's motion designating the entire record of the proceedings. Defendant's pro se assignments of error were not filed until August 22, 2011, and were untimely. Nevertheless, the defendant could have requested the appellate record be supplemented with the jury voir dire transcripts, but he did not.
While the jury voir dire was not transcribed, the record does contain defense counsel's Batson objection, belatedly raised just before the free and voluntary hearing. Counsel alleged that all four of the state's peremptory challenges were African-Americans, and requested to hear the state's race-neutral reasons. The court replied:
While the entire voir dire transcript is not included in the record, there is a telling excerpt from the transcript of the proceedings on October 22, 2009, reflecting the defense counsel's Batson challenge and the trial court's ruling on the issue. Defendant's attorney alleged that all four of the state's peremptory challenges were of African-Americans and she requested to hear the state's race-neutral reasons. The trial court replied:
We are not even getting into race-neutral reasons as there is no pattern. This is so far from a Batson challenge as I have ever seen one. Mr. Spencer Stevens, a black male, is on the jury. Ms. Jane O'Riley, a black female, was not struck by the State, but was struck by the defense. Ms. Monica Alford is a black female on the jury. Out of the first panel, only Mr. Washington was struck by the State, that being a black male. Ms. Carolyn Banks from the first panel was struck by the defense; she is a black female. She was not struck by the State.
On the second panel, Ms. Kendrick, a black female, was struck by the State. On the second panel, Ms. Rashondra Miller Johnson, a black female, is on the jury. Ms. Sharon Reese, a black female, was struck by the defense and not the State. Ms. Kenna Blackshire was *1276 struck by the State. And Ms. Natashia Wright, a black female, is on the jury. I do not see any pattern whatsoever of anyone in this case on either side trying to strike anyone of a particular sex or race, and therefore the Batson motion is denied.
Because the trial court found no pattern, i.e., that the defense made a prima facie case that the state based its peremptory challenges on race, the three-step analysis ended at that point. State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583. The trial court's ruling regarding whether there was any discriminatory intent in the state's peremptory challenges is reviewed with great deference. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). The trial court was in the best position to observe the overall voir dire proceedings. We find no error on this issue.

IV. PRO SE ATTACK ON MULTIPLE OFFENDER ADJUDICATION AND SENTENCING
The defendant raises several issues in this pro se assignment of error. First, he argues that the trial court failed to advise him of his Fifth Amendment right to remain silent prior to pleading guilty to the fourth-felony habitual offender bill of information. Second, he argues that his sentence is indeterminate because the trial court sentenced him on only two of his three convictions; specifically, the trial court did not sentence him on one count of distribution of a Schedule II, CDS. Next, he argues that the trial court incorrectly sentenced him on the felony theft conviction to a sentence which denied parole eligibility. Lastly, defendant argues that the trial court erred when it denied his motion to reconsider sentence. In his motion, defendant argued that he should not have been subjected to a mandatory life sentence pursuant to La. R.S. 15:529.1(A)(4)(b) because one of the predicate offenses, battery of a police officer, was not a crime of violence when the instant offenses were committed in 2007.

A. Right to Remain Silent
La. R.S. 15:529.1(D)(1)(a) requires that a defendant be advised of the specific allegations contained in the multiple offender bill of information and his right to a formal hearing. Implicit in that requirement is the requirement that the defendant be advised of his right to remain silent. State v. Mason, 37,486 (La.App.2d Cir.12/10/03), 862 So.2d 1077.
Here, the defendant complains that he was not advised of his right to remain silent prior to pleading guilty to being a fourth-felony offender. Contrary to defendant's argument, the record reveals the following:
THE COURT: And that you have the right againstand that by pleading guilty, by saying, yes, I am a fourth habitual offender, you're giving up the right to confront the witnesses as well as to cross-examine those witnesses? You're giving up the right to that hearing as well as you're giving up the right against compulsory self-incrimination.
THE DEFENDANT: Yes, sir.
THE COURT: You understand those rights you're giving up?
THE DEFENDANT: Yes, sir.
THE COURT: And that's what you want to do, plead guilty to being a fourth habitual offender, reserving your rights regarding dates, time sequences?
THE DEFENDANT: That's correct.
THE COURT: Okay, so you want to waive the right to a hearing; you want to waive the right to confront the witnesses against you as well as to cross-examine those witnesses?

*1277 THE DEFENDANT: Yes.
THE COURT: As well as waive the right against compulsory self-incrimination and admit that you are a fourth felony offender; is that correct, sir?
THE DEFENDANT: Yes, sir.
It is technically true that the trial court did not state "waive your right to remain silent." The court did, however, specifically ask, more than once, if the defendant want to "give up" or "waive" his right against self-incrimination, which is the equivalent of defendant's right to remain silent.

B. Remand for Sentencing
The sentencing transcript does not reflect a sentence on the second distribution count. We remand to allow the trial court to do so.

C. Denial of Parole Eligibility
Defendant argues that his felony theft conviction was ordered without the benefit of parole, probation, or suspension of sentence in violation of La. R.S. 15:529.1(G), which provides:
Any sentence imposed under the provisions of this section shall be at hard labor without the benefit of probation or suspension of sentence.
During sentencing, the trial court ordered that "with regard to the felony theft, you are hereby sentenced to 20 years at hard labor, credit for time served. This will run concurrently with the sentence of life without benefit of probation, parole or suspension of sentence." The trial court later clarified that the 20-year sentence was without the benefit of probation or suspension of sentence. Therefore, contrary to the defendant's argument, the trial court correctly sentenced the defendant for the felony theft conviction in accordance with La. R.S. 15:529.1(G). There is no error on this point.

D. Denial of Motion to Reconsider Sentence
Defendant argues that battery of a police officer was not one of the enumerated offenses listed under La. R.S. 14:2(B) as a crime of violence at the time he committed the offenses that subjected him to being a fourth-felony offender. He argues that since battery of a police officer was added in 2008, and the instant offenses were committed in 2007, then the battery of an officer conviction could not have been used as a predicate offense of a crime of violence, and his sentence, therefore, was not subject to a mandatory life under La. R.S. 15:529.1(A)(4)(b), which states:
"Crime of violence" means an offense that has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and that, by its very nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense or an offense that involves the possession or use of a dangerous weapon.
The statute then sets forth an illustrative list of enumerated crimes of violence. This list of crimes is not an exclusive list. See State v. Smith, 45,430 (La.App.2d Cir.8/11/10), 47 So.3d 553, writ denied, 2010-2384 (La.3/4/11), 58 So.3d 474.
Battery of a police officer is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a police officer acting in the performance of his duty. La. R.S. 14:34.2(A)(1).
Battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33.
The language in La. R.S. 15:529.1(A)(4)(b) provides for a mandatory life sentence of a fourth-felony offender *1278 when one of the prior felonies is defined as a crime of violence under La. R.S. 14:2(B); it does not require that the offense be enumerated as a crime of violence. The list of crimes in La. R.S. 14:2(B) is not exclusive. The crime of battery of an officer in 2007 satisfied the definition of a crime of violence. It is of no moment whether or not the crime of battery of a police officer in 2007 was an enumerated crime of violence.

DECREE
We affirm all three convictions and the two sentences before us. We remand for sentencing on the second distribution count.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, DREW and MOORE, JJ.
Rehearing denied.
NOTES
[1] The substance was later determined by Bruce Stentz, forensic chemist, to consist of only about five grams of cocaine; the rest was a Vitamin B12 supplement.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Some of the buy funds were recovered at Justin Thomas' residence.
[4] La. C. Cr. P. art. 770(3), in pertinent part, provides:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(3) The failure of the defendant to testify in his own defense.
The purpose behind La. C. Cr. P. art. 770(3) is to protect the defendant's Fifth Amendment right against self-incrimination by preventing attention being drawn directly or indirectly to the fact that the defendant did not testify. State v. White, 36,935 (La.App.2d Cir.6/6/03), 850 So.2d 751, writ denied, 2003-2616 (La.5/14/04), 872 So.2d 510, citing State v. Fullilove, 389 So.2d 1282 (La.1980); State v. Mitchell, 2000-1399 (La.2/21/01), 779 So.2d 698.
When the prosecutor makes a direct reference to the defendant's failure to take the stand, a mistrial shall be granted. However, when the reference to the defendant's failure to take the stand is not direct, the court "will inquire into the remark's intended effect on the jury in order to distinguish indirect references to the defendant's failure to testify from statements that are not about defendant's failure to testify." State v. Fullilove, supra. For a court to grant a mistrial, the inference must be plain that the remark was intended to focus the jury's attention on the defendant not testifying. State v. Fullilove, supra; State v. Jackson, 454 So.2d 116 (La.1984); State v. Smith, 433 So.2d 688 (La.1983).
There are indirect references which are not intended to focus on a defendant not testifying. One instance is when a prosecutor emphasizes that the state's evidence is unrebutted in a situation where there are other witnesses, other than the defendant, who could have testified on behalf of the defense. Argument to the jury that the state's presentation of the evidence is uncontroverted does not constitute an impermissible reference to the defendant's failure to testify. State v. Smith, supra.
[5] La. R.S. 15:529.1(A), in pertinent part, provides:

(4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
(b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Where there is a mandatory sentence, there is no need for the trial court to justify, under article 894.1, a sentence it is legally required to impose. State v. Burd, 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La. 11/9/06), 941 So.2d 35; State v. White, 45,915 (La.App.2d Cir.2/2/11), 58 So.3d 493, writ denied, 2011-0373 (La.6/24/11), 64 So.3d 220. Because the sentence imposed for the habitual offender adjudication is prescribed by statute, the trial court's compliance with La. C. Cr. P. art. 894.1 is not required. State v. Thomas, 41,734 (La.App.2d Cir. 1/24/07), 948 So.2d 1151, writ denied, 2007-0401 (La.10/12/07), 965 So.2d 396; State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defendant. State v. Thomas, supra, citing State v. Johnson, 31,448 (La.App.2d Cir.3/31/99), 747 So.2d 61, writ denied, 99-1689 (La. 11/12/99), 749 So.2d 653, cert. denied, 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, supra. In State v. Dorthey, 623 So.2d 1276 (La.1993), the supreme court addressed the issue of mandatory sentences in the context of the habitual offender law. The court held that the downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case.
[6] La. R.S. 15:529.1(G) provides: Any sentence imposed under the provisions of this section shall be at hard labor without benefit of probation or suspension of sentence.
[7] The use of peremptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In State v. Draughn, 2005-1825 (La. 1/17/07), 950 So.2d 583, the proper reviewing process for a Batson claim, as recently described by the Supreme Court, was set forth as follows:

A defendant's Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Id., at 97-98, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. Batson, supra, at 98, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, supra, at 768, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834.
To establish a prima facie showing for a Batson challenge: (1) the objecting party must demonstrate that the challenge was directed at a member of a cognizable group; (2) the objecting party must then show the challenge was peremptory rather than for cause; and (3) finally, the objecting party must show circumstances sufficient to raise an inference that the challenging party struck the venire person on account of being a member of that cognizable group. Price v. Cain, 08-30338 (5th Cir.2/17/09), 560 F.3d 284; State v. Givens, 99-3518, p. 5 (La.1/17/01), 776 So.2d 443, 449. For a Batson challenge to succeed, a racially discriminatory result is not sufficient; instead, the result must be traced to a racially discriminatory purpose. State v. Dorsey, 2010-0216 (La.9/7/11), 74 So.3d 603, citing Batson v. Kentucky, supra.
The trial court plays a unique role in the dynamics of a voir dire, for it is the court that observes firsthand the demeanor of the attorneys and venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006); State v. Myers, 1999-1803 (La.4/11/00), 761 So.2d 498. A reviewing court owes the district judge's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson, supra.
The defendant is entitled to a review of his conviction upon a complete record. La. Const. Art. I, § 19.